248 P.3d 1219

**Rosemarie A. JAYLO, Plaintiff–Appellee,**

v.

**Aldo M. JAYLO, Defendant–Appellant.**

**and**

**Rosemarie Aguirre Jaylo, Plaintiff–Appellant,**

v.

**Aldo Macapal Jaylo, Defendant–Appellee.**

**Nos. 27851, 28049.**

Intermediate Court of Appeals of Hawai'i.

Feb. 8, 2011.

As Amended March 30, 2011.

---

Robert M. Harris (Denise Miyasaki Wheeler with him on the briefs) for Defendant–Appellant/Appellee.

Steven J. Kim, Honolulu, for Plaintiff–Appellee/Appellant.

FOLEY, Presiding Judge, FUJISE and LEONARD, JJ.

Opinion of the Court by FUJISE, J.

In these consolidated appeals, Defendant–Appellant/Appellee Aldo Macapal Jaylo (Husband) and Plaintiff–Appellee/Appellant Rosemarie Aguirre Jaylo (Wife) appeal from post-divorce decree orders entered by the Family Court of the First Circuit (family court). In appeal No. 28049, Wife appeals from an order entered by the family court on July 19, 2006, denying her motion for enforcement of

the divorce decree provision of in-lieu payments of her share of Husband's military retirement benefits. In appeal No. 27851, Husband appeals from the March 6, 2006 order entered by the family court,[1] awarding educational child support for the parties' twenty-six-year-old child to Wife. We affirm in No. 28049 and vacate and remand in No. 27851.

## I.

Husband and Wife were married in Hawai'i on January 26, 1980. During the course of their marriage, they had three daughters who, at the time this divorce action was filed, were living in Washington State with the children's aunt and attending middle and high schools. Wife, who filed for divorce on June 4, 1996, also asked for custody of and child support for the three children and for division of the parties' debts and assets.

On July 29, 1996, the family court entered a divorce decree (Decree) that (1) dissolved the marriage of Husband and Wife; (2) awarded (a) full legal and physical custody of the children to Wife, (b) reasonable visitation to Husband, and (c) child support to be paid by Husband to Wife; (3) awarded no spousal support; and (4) divided the assets and debts between Husband and Wife.

Regarding child support, the Decree provided:

Payments of child support shall continue for each child until each child attains the age of 18 years or graduates from high school or discontinues high school[,] whichever occurs last, subject to further order of the court. Child support for each child shall further continue uninterrupted so long as each child continues his education post high school on a full-time basis at an accredited college or university, or in a vocational or trade school and shall continue until each child's graduation or attainment of the age of 23 years, whichever event shall first occur.

The decree also provided for the payment of educational expenses as follows:

7. *EDUCATION.*

(A) *Special education Expenses.* [Wife] and [Husband] shall equally split any and all costs incurred for special education needs of the minor children.

(B) *Post High School, Higher Education Expenses.* Should either child of the parties continue his education post high school on a full time basis at an accredited college or university, or in a vocational or trade school, [Wife] and [Husband] shall each assume and pay one-half (1/2) of the said post high school higher education expenses, including but not limited to tuition, fees, book expenses and necessary transportation expenses. [Wife] and [Husband] shall each continue to pay one-half (1/2) of the higher education expenses for said child until said child's graduation or attainment of the age of 23 years, whichever event shall first occur. This provision shall be subject to further order of the Court.

The Decree also included the following, regarding the division of Husband's military retirement benefits:

13. *PERSONAL PROPERTY.*

. . . .

(E) *Retirement.* Effective upon [Husband's] retirement from the United States Armed Forces, and continuing for so long as both parties shall live, [Wife] shall receive a portion of each payment of military disposable retired or retainer pay to which [Husband] is entitled.

[Wife's] portion of each payment of disposable retired or retainer pay shall be "X" in the following formula, in which "M" is the total number of years of the marriage [that] were also years credited to [Husband] for retirement purposes, "Y" is the total number of years credited to [Husband] for retirement purposes, and in which "DRRP" equals the payment of disposable retired or retainer pay to be divided.

X = [.5] [M/Y] [DRRP]

*Disposable retired or retainer pay for these purposes shall be the gross retired or retainer pay to which [Husband] is entitled less only amounts which:*

---

1. The Honorable Karen M. Radius presided.

(3) *in the case where [Husband] is entitled to retired pay under Chapter 61 of Title 10, U.S.C.,*[2] *an amount which is equal to the amount of retired pay of [Husband] under that Chapter computed using the percentage of [Husband's] disability on the date when [Husband] was retired (or the date on which his name was placed on the temporary disability retired list);* or

. . . .

If other deductions from gross monthly retired of [sic] retainer pay are made, [Wife's] portion of each payment of disposable retired or retainer pay shall be increased so that [Wife] receives what she would have received had those other reductions not occurred.

The United States Government shall directly pay [Wife] her portion of [Husband's] disposable retired or retainer pay.

(a) The parties were married on January 26, 1980.

(b) [Husband] has served in the United States Armed Forces since 1988.[3]

. . . .

In the event that the United States Government will not directly pay [Wife] all she is entitled to under this Section, [Husband] shall immediately make payment to [Wife] of her portion of his disposable retired or retainer pay as soon as he receives it.

Each time [Husband] receives a statement of his retired or retainer pay, he shall promptly send [Wife] a copy.

The Family Court has jurisdiction over [Husband's] disposable retired or retainer pay pursuant to the Uniform[ed] Services Former Spouses Protection Act of 1982 *as amended.*[4]

(1) Pursuant to Section 580–47 of the Hawaii Revised Statutes [HRS] [Husband's] disposable retired or retainer pay is subject to equitable division upon divorce.

(2) Pursuant to Section 580–1 of the [HRS] the Family Court has jurisdiction to divide property incident to divorce.

(3) [Husband] has been afforded his rights under the Soldiers and Sailors Civil Relief Act of 1940.

(4) [Husband] has consented to Family Court jurisdiction over his retired or retainer pay.

(5) [Husband] is domiciled in the territorial jurisdiction of the court.

2.  It is doubtful that Husband drew his retirement pay under "Chapter 61 of Title 10, U.S.C." Although the record provides no evidence of the reasons for Husband's separation from the military, the record shows that Husband had retired after fifteen and one-half years in the military and prior to February 26, 2003, was 20% disabled. A service member with these characteristics today would be "separated" from the military with a one-time severance payment. *See* 10 U.S.C. § 1203, 1212 (2000).

The most likely explanation for Husband's ongoing receipt of retirement benefits despite his comparatively low disability rating is the Temporary Early Retirement Authorization (TERA), a mechanism to effectuate troop draw down. Pub.L. No 102–484 § 4403, 106 Stat. 2702, 2703 (1992). *See* notes following 10 U.S.C. § 1293 (2000). Under TERA, each branch of the armed forces was authorized to grant prorated retirement pay and other benefits to personnel with between fifteen and twenty years in active-duty service. *Id.* Based on the record in this case, it is likely that Husband retired early. *See In re Marriage of Wherrell,* 274 Kan. 984, 58 P.3d 734, 738–39 (2002) (recognizing possibility that former husband, an eighteen-year veteran with thirty percent disability, retired under TERA).

3.  Although the Decree states that Husband joined the military in 1988, and neither party contested that date, in Exhibit D attached to his "Affidavit of Defendant in Response and Opposition to Plaintiff's Motion and Affidavit for Post-Decree Relief Filed November 12, 2002," Husband calculated Wife's percentage share of his retirement benefits as 46.5% using military service dates of December 1978 and June 1994. Wife agreed with Husband's calculation.

4.  The Uniformed Services Former Spouses Protection Act (USFSPA) allows Wife to request direct payment of her share of Husband's retirement pay, if he is entitled to any, by presenting the appropriate documentation. 10 U.S.C. § 1408 (2000). Although the record shows that Wife submitted the Order for Income Assignment to the Defense Finance and Accounting Service (DFAS) in 1996, there is no evidence that Wife served DFAS with other required documentation. Regardless of any previous defects in filing with DFAS, there is nothing in 10 U.S.C. § 1408 that prevents Wife from reapplying to receive her share of any retirement pay in the future. However, DFAS cannot operate retroactively. *See* 10 U.S.C. § 1408(d)(5).

*If at any time after he is retired, [Husband] voluntarily causes a reduction in his gross retired or retainer pay, and thereby deprives [Wife] of a part or all of his [sic] benefits conferred by this Section, [Husband] shall be deemed to have created a constructive trust for [Wife's] benefit under Federal and applicable State law, and [Wife] shall thereupon have an interest in, and the right of immediate possession of, so much of [Husband's] property awarded hereby as is necessary to satisfy said trust. The Family Court shall have continuing jurisdiction to enforce the trust, and make all orders necessary to implement the trust.*

(Emphasis and footnotes added).

On November 12, 2002, Wife filed her first "Motion and Affidavit for Post–Decree Relief" (First Motion), asking for modification and enforcement of the Decree. Wife asked that, instead of selling the marital residence and dividing the proceeds, the family court should award title of the marital residence to her. This request was based on Husband's failure to pay, as ordered in the Decree, (1) his share of the children's educational expenses and (2) Wife's share of Husband's military retirement benefits. Wife alleged that Husband's total obligation for these two items exceeded the parties' equity in the marital residence.

Wife claimed that Section 13(3) of the Decree entitled her to a marital portion of Husband's military retired pay, but since the Decree was entered, she had not received any military retired pay from either the military pay center or Husband. She calculated that Husband owed her $35,959.

Husband agreed that he should pay some of the children's educational expenses and that Wife was entitled a share of his retirement benefits, but disagreed with Wife's calculations.

After Wife filed her First Motion but before trial was held on November 21, 2003, the Veterans' Administration (VA), upon Husband's application, increased Husband's disability rating to 60 percent, and pursuant to federal law,[5] Husband waived his retirement in order to receive VA benefits.

The parties submitted closing arguments on January 20, 2004. Husband admitted that he did not pay Wife $12,921.77 in military retirement, but he argued that Wife's entitlement to Husband's retirement ended on February 28, 2003, the date on which Husband exclusively received VA disability payments.

Wife disputed Husband's argument that she was no longer entitled to any portion of his retirement benefits given that he was no longer receiving them. She concluded:

Pursuant to above-referenced [6] plain language of the Decree, regardless of Husband's present disability rate, and regardless whether this is termed as VA benefits rather than Disability, Wife is still entitled to the same 46.5% as on the date of the Decree, Husband only had 20% disability and therefore, would still be entitled to receive retired pay rather than full VA benefits.

---

5. Prior to January 1, 2004, service members were required to waive retirement benefits on a dollar-for-dollar ratio with benefits received from the VA. *See* 38 U.S.C. § 5305 (2000 and Supp. 2004). As of January 1, 2004, qualified retirees with a disability rating over 50% could receive both pension and VA benefits, which the military calls Concurrent Retirement and Disability Pay (CRDP). Pub.L. 108–136 § 641, 117 Stat. 1392, 1511 (2003); 10 U.S.C. § 1414 (Supp.2004). Service members retired on account of disability with less than 20 years in service cannot collect CRDP, but early-retirees under TERA can. *Id.* at 1511, 10 U.S.C. § 1414(b)(2). The retirement portion of CRDP is divisible in a divorce. *See Youngblood v. Youngblood*, 959 So.2d 416, 417–19 (Fla.Dist.Ct.App.2007).

6. Wife's reference is to the following language contained in section 13(E)(5) of the Decree:

If at any time after he is retired, [Husband] voluntarily causes a reduction in his gross retired or retainer pay, and thereby deprives [Wife] of a part or all of his benefits conferred by this Section, [Husband] shall be deemed to have created a constructive trust for [Wife's] benefit under Federal and applicable State law, and [Wife] shall thereupon have an interest in, and the right of immediate possession of, so much of [Husband's] property awarded hereby as is necessary to satisfy said trust. The Family Court shall have continuing jurisdiction to enforce the trust, and make all orders necessary to implement the trust.

On June 1, 2004, the family court[7] entered its order deciding Wife's First Motion (June 1, 2004 Order) by denying Wife's request to have the marital residence placed in her name and awarding Wife $20,615.80 as Husband's share of the children's past educational expenses. With regard to Husband's retirement benefits, the family court ruled,

> Pursuant to Paragraph 13(E) of the Divorce Decree regarding the division of [Husband's] retirement benefits, [Husband] owes [Wife] $12921.77 for benefits received prior to February 28, 2003. A judgment for $12921.77 shall hereby be entered against [Husband].
>
> [Husband's] retirement benefits ended on February 28, 2003 due to the receipt of veterans' disability benefits.

The family court said nothing in its order regarding Wife's rights, or lack thereof, to payments Husband might receive after February 28, 2003.

On September 3, 2004, based on Husband's June 10, 2004 motion for reconsideration, the family court reduced the educational support award to $19,255.12 and ordered that Husband pay the retirement and educational support arrearage award in twelve equal monthly installments (September 3, 2004 Order).

No appeal from this September 3, 2004 Order or the June 1, 2004 Order was taken by either party.

On May 24, 2005, Wife filed "Plaintiff's Motion for Relief From Provisions of [June 1, 2004 Order] Pertaining to Retirement Benefits and For Order Re–Establishing Child Support for Adult Handicapped Daughter" (Second Motion). Wife argued that the family court should grant relief, under Hawai'i Family Court Rules (HFCR) Rule 60(b)(1) and (6),[8] from the portion of the June [1], 2004 Order [9] "which held that [Wife] was not entitled to any payment from [Husband] after February 28, 2003 for her share of retirement benefits" because that ruling was "a mistake, or, alternatively, that relief is justified from that portion of the Court's ruling in light of the ICA's recent decision" in *Perez v. Perez*, 107 Hawai'i 85, 110 P.3d 409 (App. 2005). Relying on HRS §§ 577–7(a) [10] and 580–47(a) [11] as her authority, Wife also

---

7. The Honorable Nancy Ryan presided. The order was drafted by Huilin Dong, Wife's attorney at the time. On the same day the order was filed, a "Withdrawal and Substitution of Counsel" was also filed, substituting Steven J. Kim, Wife's present counsel, for Ms. Dong.

8. HFCR Rule 60(b) provides,

    **(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken. For reasons (1) and (3) the averments in the motion shall be made in compliance with Rule 9(b) of these rules. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

9. Although Wife references the "June 4, 2004 order," we again surmise this is a typographical error as no order was filed in this case on June 4, 2004.

10. The portion of HRS § 577–7(a) (2006) quoted by Wife provides, "[a]ll parents and guardians shall provide, to the best of their abilities, for the discipline, support and education of their children." HRS § 577–7(a).

11. HRS § 580–47(a) (2006) (emphasis added) provides, in pertinent part,

    **§ 580–47. Support orders; division of property**
    (a) *Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by*

sought child support for the parties' adult blind daughter born on April 28, 1980 (Daughter), who was continuing to pursue her college education past the age of twenty-three years.

On July 14, 2005, Husband filed a response to Wife's motion, arguing that, with regard to Wife's claim to his retirement benefits, HFCR Rule 60(b) did not apply because the change in case law was not made retroactive. As to Wife's request for support for Daughter, Husband argued that Daughter's disability was known at the time of the Decree, no provision for her was sought or ordered, the family court did not reserve jurisdiction over the issue of child support and, in any event, Wife's request for this support was not brought within a reasonable time.

A short trial was held on September 9, 2005, both parties submitted additional memoranda regarding whether (1) HFCR Rule 60(b) authorized a reopening of the June 1, 2004 Order and (2) child support could be reestablished under HRS § 580–47.

In her supplemental memorandum, Wife argued that, at the time the June 1, 2004 Order was entered, "there was no existing Hawaii case law on the issue of whether a military retiree could diminish a former spouse's entitlement to retirement benefits by electing to receive his/her benefits as veteran's disability benefits instead of as retirement benefits." The state of the law changed, Wife argued, when this court issued the *Perez* decision on March 22, 2005, and Wife brought her motion approximately two months after the *Perez* decision and within one year of the June 1, 2004 Order.[12]

As to Wife's request for extended support for Daughter, Wife primarily relied on HRS § 580–47(a) authorizing the family court to issue orders regarding child support after the divorce is granted and after the child has attained the age of majority as well as the language in the Decree reserving jurisdiction of the family court over child support.

Husband argued that none of the bases identified in HFCR Rule 60(b) applied, that the *Perez* case was not, by its terms, retroactive, and that Wife's remedy was to have appealed the June 1, 2004 Order. Husband relied on an unidentified "Family Court memorandum" for his position that an "adult child" for the purposes of HRS § 580–47 was a child under the age of twenty-three. Husband also argued that Wife should have asked for support for Daughter in Wife's First Motion, as by then Daughter had already reached age twenty-three and was attending college, and therefore this relief was also barred under HFCR Rule 60(b). Husband did not counter Wife's arguments as to Daughter's needs and expenses.

On March 6, 2006, the family court granted Wife's motion with regard to child support and denied relief with regard to Husband's retirement benefits, making the following findings of fact and conclusions of law (March 6, 2006 Order):

1. The parties were divorced on July 29, 1996. At that time [Daughter] was 16 years old.

2. The Divorce Decree provided child support for the minor children of the parties including [Daughter] through gradua-

---

each party by reason of the divorce. *In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case. In establishing the amounts of child support, the court shall use the guidelines established under section 576D–7. Provision may be made for the support, maintenance, and education of an adult or minor child* and for the support, maintenance, and education of an incompetent adult child *whether or not the petition is made before or after the child has attained the age of majority.*

12. *Perez* held that "a party's vested interest in a military pension cannot be unilaterally diminished by an act of a military spouse," inasmuch as this "would constitute an impermissible modification of a division of marital property." 107 Hawai'i at 91–92, 110 P.3d at 415–16. As such, *Perez* affirmed an order entitling a non-military spouse to "an amount equal" to her share of the military spouse's pension, provided that the military spouse is "able to satisfy his obligation with a source of funds other than his disability benefits," which could not be treated as divisible. 107 Hawai'i at 92, 110 P.3d at 416.

tion from high school and then continuing through age 23 so long as then adult child attended an accredited college or university. The Divorce Decree further provided for each of the parties to pay one half of the post high school higher education expenses (defined as tuition, fees, book expenses and necessary transportation) for each child until that child graduated or attained 23 years of age. The Decree provided that "This provision shall be subject to further order of the Court."

3. [Daughter] was born on April 14, 1980 and thus was 25 years old when [Wife] filed her motion in this case on May 24, 2005.

4. [Daughter] has been legally blind since birth. She currently lives in Washington state. She graduated from high school at the Washington State School for the Blind in 2000 at age 20.

5. [Daughter] has continued on in college in Washington, living independently and taking between 10–15 credit hours per semester as well as life-skills courses through the Department of Services for the Blind. She hopes to graduate with a degree in music.

6. Given [Daughter's] challenges she is taking the maximum number of credits to be able to complete college in a timely fashion and thus would be considered a full time student.

7. [Daughter] has hopes of earning a bachelor's degree and becoming a flute teacher.

8. [Daughter] has secured scholarships and other benefits for tuition and some related expenses. She has maximized the benefits available to her.

9. [Daughter] has joined in [Wife's] request that [Husband] pay a portion of her reasonable living expenses as she pursues a bachelor's degree.

10. [Daughter's] uncovered expenses of $834.00 per month as testified to and set forth on the statement attached to [Wife's] Income and Expense statement are reasonable.

11. The parties['] proportional share of income as set forth on line 13 of the Child Support Guidelines Worksheet attached hereto as Exhibit "A" are 63% [Husband] and 37% [Wife].

12. HRS [§] 580–47 provides that "Provision may be made for the support, maintenance, and education of an adult child ... whether or not the petition is made before or after the child has attained the age of majority."

13. Good cause exists in this case to order that [Husband] pay 63% of the $834.00 per month of [Daughter's] expenses, namely $525.42 per month for her support, maintenance and education. [Wife] shall pay 37% of the $834.00 per month of [Daughter's] expenses, namely $308.58 per month for her support, maintenance and education.

14. Said order shall be in full force and effect so long as [Daughter] is pursuing a bachelor's degree and continuing at the maximum amount of courses prescribed by the college based upon her disability.

15. As to the [Wife's] Motion for Relief from [the June 1, 2004] Order Pertaining to Retirement Benefits, [Wife's] Motion is denied. [Wife] chose not to appeal Judge Ryan's [June 1, 2004 Order]. *See Hammon v. Monsef,* 8 Haw.App. 58 [792 P.2d 311] (1990).[13]

(Footnote added.)

On March 20, 2006, Wife filed "[Wife's] Motion For Clarification and/or Reconsideration of Order Granting in Part and Denying in Part [Wife's] Motion for Relief From 6/30/04 [sic] Order Pertaining to Retirement

**13.** The family court presumably relied upon the following reasoning from *Hammon v. Monsef,* 8 Haw.App. 58, 64, 792 P.2d 311, 314 (1990):

We agree with *Ritter v. Smith,* 811 F.2d 1398, 1401 (11th Cir.1987) that "something more than a 'mere' change in the law is necessary to provide the grounds for Rule 60(b)(6) relief." We further agree with the view that "[t]he broad power granted by clause (6) is not

for the purpose of relieving a party from free, calculated, and deliberate choices [she] has made. A party remains under a duty to take legal steps to protect [her] own interests. In particular, it ordinarily is not permissible to use this motion to remedy a failure to take an appeal." *Wright & Miller, Federal Practice and Procedure: Civil § 2864 (1973)* (footnotes omitted).

Benefits and for Order Reestablishing Child Support for Adult Handicapped Daughter, Filed 3/6/06." The motion asked for clarification of the child support award contained in the March 6, 2006 Order. However, no disposition of this motion appears in the record and Wife did not appeal from the March 6, 2006 Order.

On March 31, 2006, Husband filed a notice of appeal from the March 6, 2006 Order.[14]

On April 6, 2006, Wife filed "Plaintiff's Motion to Enforce the Decree Granting Absolute Divorce and Awarding Child Custody by Establishment of *Perez* Payments and/or a Constructive Trust" (Third Motion). Wife based her motion on HFCR Rule 7 (the basic motions rule), the *Perez* decision, and the USFSPA (10 United States Code § 1408 (1982)), authorizing division of service members' retirement benefits. Wife argued that the court should impose a constructive trust for the portion of Husband's retirement benefits she was entitled to but for Husband's election of disability benefits and should enforce the Decree and award payments in lieu of her share of retirement benefits as provided in *Perez.* Husband responded to Wife's Third Motion, arguing that Wife was presenting the same issue and seeking the same relief as in the First and Second Motions, and as Wife failed to appeal the family court's adverse rulings in both motions, Wife should not be entitled to any relief.

**14.** Husband also moved for relief from the March 6, 2006 Order, challenging the computation of the child support amount awarded. Husband's motion was summarily denied.

**15.** Wife raises the following questions on appeal:

Whether the Family Court erred by its refusal to enforce the provisions in the Divorce Decree filed 7/29/96 awarding her a portion of [Husband's] retirement plan, in view of *Perez v. Perez,* 107 Hawai'i 85, 110 P.3d 409 (2005), where [Husband] has other income and assets besides military disability, from which to satisfy his obligation to pay the amounts owed to [Wife].

Whether, the Family Court acted outside of its subject matter jurisdiction set forth in HRS § 580-56(d) by its determination on 6/1/04 that [Husband's] retirement benefits ended due to his election to receive his retirement benefits in the form of VA disability benefits, and

After hearing argument on the Third Motion, the family court entered a written order denying Wife's Third Motion. While the family court's July 19, 2006 "Order Denying Plaintiff's Motion to Enforce Decree, et al." (July 19, 2006 Order) merely stated that Wife's motion was denied, at the close of the July 19, 2006 hearing, the family court stated that Wife's motion was denied "[b]ased upon the arguments presented by [Husband's counsel], based upon the totality of the circumstances in this case," and "based upon the law, the court rules, and prior orders entered in this case."

On July 21, 2006, Wife filed a notice of appeal from the family court's July 19, 2006 Order.

## II.

### A. Wife's Appeal

■ On appeal, Wife argues [15] that the family court erred by refusing to enforce the retirement division provisions in the divorce decree. While Wife did not explicitly bring her Third Motion pursuant to HFCR Rule 60(b), we look to the substance of her motion to determine its nature. *Madden v. Madden,* 43 Haw. 148, 149–50 (1959) ("motion to set aside the final order and for other relief was a motion to alter or amend a judgment under rule 59(e), although not denominated as such") and *Anderson v. Oceanic Properties, Inc.,* 3 Haw.App. 350, 355, 650 P.2d 612,

whether such order had the legal effect of modifying the parties' Divorce Decree and terminating [Wife's] entitlement to payments equivalent to her share of [Husband's] retirement benefits, as set forth in *Perez v. Perez,* 107 Hawai'i 85, 110 P.3d 409 (2005).

We note that Wife's points on appeal fail to comply with Hawai'i Rules of Appellate Procedure Rule 28(b)(4) and on that basis alone could be disregarded. *O'Connor v. Diocese of Honolulu,* 77 Hawai'i 383, 385, 885 P.2d 361, 363 (1994). Nevertheless, the appellate courts of this jurisdiction have "consistently adhered to the policy of affording litigants the opportunity to have their case heard on the merits where possible." *Housing Fin. & Dev. Corp. v. Ferguson,* 91 Hawai'i 81, 85–86, 979 P.2d 1107, 1111–12 (1999) (citation and internal quotation marks omitted). Counsel is reminded, however, that failure to comply with court rules may result in sanctions.

617 (1982) ("it is the substance of the pleadings that control, not its nomenclature").

In her Third Motion, Wife sought relief from the June 1, 2004 Order insofar as it terminated her entitlement to Husband's retirement benefits on the date he opted for disability benefits. She essentially argued that the terms of the Decree and case law decided subsequent to the June 1, 2004 Order justified relief from this order. *See* HFCR Rule 60(b)(6). Wife's Third Motion is, in substance, identical to her Second Motion, which was explicitly based on HFCR Rule 60: both ask for enforcement of the terms of the Decree regarding the retirement benefits and both rely on *Perez* as the primary support for the motion. Both motions asked the family court to reconsider its previous ruling that Wife was no longer entitled to her share of Husband's retirement benefits. As such, Wife's Third Motion was a second HFCR Rule 60(b) motion to reconsider the June 1, 2004 Order. Indeed, the family court treated the Third Motion as seeking the same relief, as it denied the same, in large part, because Wife had not appealed from the orders denying her previous motions.

■ Under similar circumstances, this court has affirmed the denial of an HFCR Rule 60(b) motion for reconsideration of an order denying a prior motion for reconsideration, where both motions were denied on the same grounds. *Dosland v. Dosland*, 5 Haw. App. 87, 88, 678 P.2d 1093, 1095 (1984). There, the appellant moved to reconsider a divorce decree and the family court denied the motion. A second motion to reconsider based on the same grounds was also denied. We held that the order denying the first motion to reconsider became final when it was not appealed.[16] "[A]s such, it bars consideration of a subsequent motion under Rule 60(b) HFCR, which is based on the same grounds." *Dosland*, 5 Haw.App. at 88, 678 P.2d at 1095. We see no reason to hold differently here.

■ A motion for reconsideration is "not a device to relitigate old matters" (*Schiller v. Schiller*, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (2009) (citation omitted)), and is generally not intended to relieve parties from their "free, calculated, and deliberate choices," including the choice not to appeal. *Hammon v. Monsef*, 8 Haw.App. at 64, 792 P.2d at 314 (citation and internal quotation marks omitted). We find no error in the family court's decision to deny Wife's Third Motion.

## B. Husband's Appeal

Husband summarizes his position on appeal as follows:

In this case there was no question that [Daughter] was an adult child of the parties at the time that [Wife's] [First Motion] was filed and adjudicated. There was also no question that the parties' [Decree] reserved the issue of modification of future child support. Additionally, there was no question that, pursuant to *HRS* § 580–47(c), the Family Court had statutory authority to modify child support post-divorce. The other elements of the *HRS* § 580–47(a) requirements were either disputed at the trial, or at least required clarification at trial in terms of the parties' positions. Those elements were: (1) whether [Daughter] was an incompetent adult child; (2) whether [Daughter] was an adult child entitled to child support while she pursued her education; and (3) whether the Court had authority to modify child support pursuant to *HRS* § 580–47(d).

However, as Wife conceded below during the short trial held on her Second Motion, Daughter "is not an incompetent child" for HRS § 580–47(a) purposes. Therefore, the remaining issues before us on appeal are (1) whether the family court had the authority to consider awarding educational child support for Daughter (a) without a showing of a material change in circumstances or good cause and (b) where Daughter was over the

---

16. "A post-judgment order is an appealable final order under HRS § 641–1(a) if the order finally determines the post-judgment proceeding." *Hall v. Hall*, 96 Hawai'i 105, 111 n. 4, 26 P.3d 594, 600 n. 4 (App.2001), *affirmed in part, and vacated in part on other grounds*, 95 Hawai'i 318, 22 P.3d 965 (2001). For example, "[a]n order denying a motion for post-judgment relief under HRCP [Rule] 60(b) is an appealable final order under HRS § 641–1(a)." *Ditto v. McCurdy*, 103 Hawai'i 153, 160, 80 P.3d 974, 981 (2003).

age of twenty-three; and if so, (2) whether the amount of the family court's award was appropriate.[17]

In this state, parents are statutorily required to "provide, to the best of their abilities, for the discipline support, and education of their children." HRS § 577–7. Given this responsibility, when parents divorce, HRS § 580–47 expressly authorizes the family court to compel the parents, "or either of them to provide for the support, maintenance, and education of the children of the parties[,]" and "[p]rovision may be made for the support, maintenance, and education of an adult or minor child . . . whether or not the petition is made before or after the child has attained the age of majority." HRS § 580–47.

The Decree in this case provided for, among other things, child support payments for all three of the parties' children, so long as they continued their education on a full-time basis at an accredited college or university, "until each child's graduation or attainment of the age of 23 years, whichever event shall first occur." The Decree's provision for educational support stated that it "shall be subject to the further order of the court."

■ Wife made her request for educational support for Daughter in her Second Motion, when Daughter was still 22. Husband argues that the family court had no authority to take up Wife's request for educational child support for Daughter because Wife failed to establish "a material change of circumstances" to justify modifying the Decree. Husband is mistaken.

It is true that HRS § 580–47(c) [18] preserves the family court's ability to revise its orders regarding support "upon a showing of a change in the circumstances." However,

---

17. Husband challenges the following conclusions of law contained in the May 19, 2006 Findings of Fact and Conclusions of Law, and which read as follows:

> 23. [HRS] Section 577-7(a) provides, in pertinent part, that "[a]ll parents and guardians shall provide, to the best of their abilities, for the discipline, support, and education of their children."
> . . . .
> 25. In addition to the foregoing, the Court has continuing jurisdiction over the issues of child support and the children's post high school, higher educational expenses, as such continuing jurisdiction was specifically reserved in the Decree. *See* the Decree, at pp. 5–6.
> 26. Applying the gross incomes of the parties to the applicable child support guidelines, Father's child support obligation would be $660.00 per month, and Mother's, child support obligation would be $390.00 per month. However, this Court concludes that [Daughter's] receipt of her own income of $625.00 per month is an exceptional circumstance warranting deviation from the parties' child support obligation under the child support guidelines. *Nabarrete v. Nabarrete*, 86 Hawai'i 368, 949 P.2d 208 (1997).
> 27. Accordingly, the Court concludes that [Daughter's] current reasonable monthly need is $834.00 per month, and that good cause exists to require Father to be responsible to pay 63% ($525.42 per month) and Mother to be responsible to pay 37% ($308.58 per month), based on their proportionate incomes,

as ordered by the Court in its order filed herein on March 6, 2006.
> 28. Mother's and Father's obligations to pay child support for [Daughter] shall remain in full force and effect for a limited time, so long as [Daughter] is pursuing a bachelor's degree and continuing at the maximum amount of courses prescribed by her college, taking into account her disability.

18. HRS § 580–47(c) provides,

> (c) No order entered under the authority of subsection (a) or entered thereafter revising so much of such an order as provides for the support, maintenance, and education of the children of the parties shall impair the power of the court from time to time to revise its orders providing for the support, maintenance, and education of the children of the parties upon a showing of a change in the circumstances of either party or any child of the parties since the entry of any prior order relating to the support, maintenance, and education. The establishment of the guidelines or the adoption of any modifications made to the guidelines set forth in section 576D-7 may constitute a change in circumstances sufficient to permit review of the support order. A material change of circumstances will be presumed if support as calculated pursuant to the guidelines is either ten per cent greater or less than the support amount in the outstanding support order. The need to provide for the child's health care needs through health insurance or other means shall be a basis for petitioning for a modification of the support order. The most

HRS § 580–47(e) (2006) [19] gives the custodial or responsible parent the right to seek review or adjustment of the child support order once every three years, without showing a change in circumstances. *See also* HRS § 576D–7(e) (2006).[20] As Wife's 2005 Second Motion was the first request for a modification of the child support award contained in the 1996 Decree, she was not required to show a change in circumstances before the family court was authorized to review the award.

■ We thus turn to Husband's argument that the family court's award of educational support to Daughter after her twenty-third birthday was unauthorized. We begin with a survey of the statutory framework.

Family courts are authorized to order parties to a divorce "to provide for the support, maintenance, and education of the children of the parties[,]" either at the time of the granting of a divorce or, where jurisdiction over child support is reserved, at a later time "as shall appear just and equitable[.]" HRS § 580–47(a). Since 1969, the state legislature has authorized family courts to order provision of "education of an adult or minor child whether or not the application is made before or after the child has attained the age of majority." 1969 Haw. Sess. Laws Act 221, § 1 at 411–12. In doing so, the state legislature intended

> to clarify the power of the Family Court in a matrimonial action to order support or continued support by parents for a child even after he or she has reached the age of majority in order that the child may complete whatever program of education that may be suitable and feasible under the circumstances.

Under Hawaii's existing statutes and case law this power probably already exists, but in some jurisdictions distinctions have been drawn based on whether the application was made before or after the child reached majority. This bill reflects the current trend which favors extending economic support for education for a child who has reached the age of majority or continued support for education for a child beyond the age of majority in certain cases, provided that the divided parents are financially able to render such support.

S. Stand. Comm. Rep. No. 797, in 1969 Senate Journal, at 1177. The legislature did not, then or since, specify how far beyond the age of majority a parent could be required to provide economic support for the education of an adult child.

In 1977, the state legislature amended HRS § 580–47 by granting explicit authority to award "support and maintenance" in addition to the costs of education, for an adult or minor child and explicitly provided the same for "an incompetent adult child." 1977 Haw. Sess. Laws Act 37, § 1 at 46–47.[21] The Senate Standing Committee on Judiciary reported to the Senate as follows:

> The purpose of this bill is to clearly and specifically define the authority, which has been exercised by long custom and practice, of the Family Courts of the State of Hawaii in their discretion in domestic rela-

current guidelines shall be used to calculate the amount of the child support obligation.

19. HRS § 580–47(e) provides,

(e) The responsible parent or the custodial parent shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances. The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.

20. HRS § 576D–7(e) provides,

(e) The responsible or custodial parent for which child support has previously been ordered shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances. The responsible or custodial parent shall not be precluded form petitioning the family court or the child support enforcement agency for review and adjustment of the child support order more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.

21. Although subsequently renumbered as subsection (a), this language remains in the current version of the statute.

tions cases, under already accepted criteria and guideline [sic], ... to make appropriate orders: ... (3) Relating to the support and maintenance of the adult and minor children of the parties in a divorce action who are dependent by reason of their need for education or by reason of their being incompetent.

S. Stand. Comm. Rep. No. 535, in 1977 Senate Journal, at 1081 (formatting modified).

█ In 1986, in order to "bring the State into compliance with federal statutory and regulatory requirements" the Legislature amended HRS § 580–47 to require that the courts develop and use guidelines, established under what became chapter 576D, in determining child support awards. 1986 Haw. Sess. Laws Act 332, §§ 1, 2, and 18 at 695–99 and 707–08.[22] The courts were also required to periodically update the guidelines and use the most current version of the guidelines in calculating the amount of the support obligation. HRS § 576D–7(c) and

(d) (2006). Among other things,[23] courts are required to use the Child Support Guidelines established by HRS § 576D–7,[24] "except when exceptional circumstances warrant departure." HRS §§ 580–47(a) and 571–52.5 (2006). "[T]he advent of child support guidelines significantly narrowed the trial court's discretion" with regard to, *inter alia*, deviation from the guidelines. *Child Support Enforcement Agency v. Doe*, 98 Hawai'i 58, 65, 41 P.3d 720, 727 (App.2001). Whether "exceptional circumstances" exist warranting a deviation from the child support guidelines is a question of law reviewed on appeal de novo, *Child Support Enforcement Agency v. Doe*, 104 Hawai'i 449, 455, 91 P.3d 1092, 1098 (App.2004). However, the decision to order a deviation under such circumstances is discretionary, and reviewed on appeal for an abuse of that discretion. *Id.*

When the family court considered Wife's request, the 2004 Amended Child Support Guidelines (2004 Guidelines) were in effect.[25]

---

22. **Guidelines in establishing amount of child support.**
    (a) The family court, in consultation with the agency, shall establish guidelines to establish the amount of child support when an order for support is sought or being enforced under this chapter. The guidelines shall be based on specific descriptive and numeric criteria and result in a computation of the support obligation. 1986 Haw. Sess. Laws Act 332, § 2 at 698. Codified as HRS § 576D–7, this provision remains unchanged today. The first set of guidelines were created in 1987. *See Tomas v. Tomas*, 7 Haw.App. 345, 346–47, 764 P.2d 1250, 1252 (1988).

23. [T]he court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case. HRS § 580–47(a).

24. HRS § 576D–7(a) (2006) provides, in pertinent part,
    The guidelines may include consideration of the following:
    (1) All earnings, income, and resources of both parents; provided that earnings be the net amount, after deductions for taxes, and social security. Overtime and cost of living allowance may be deducted where appropriate;
    (2) The earning potential, reasonable necessities, and borrowing capacity of both parents;

(3) The needs of the child for whom support is sought;
(4) The amount of public assistance which would be paid for the child under the full standard of need as established by the department;
(5) The existence of other dependents of the obligor parent;
(6) To foster incentives for both parents to work;
(7) To balance the standard of living of both parents and child and avoid placing any below the poverty level whenever possible;
(8) To avoid extreme and inequitable changes in either parent's income depending on custody; and
(9) If any obligee parent (with a school age child or children in school), who is mentally and physically able to work, remains at home and does not work, thirty (or less) hours of weekly earnings at the minimum wage may be imputed to that parent's income.

25. The July 6, 2004 Memorandum introducing the 2004 Guidelines stated,
    These [2004 Guidelines] will be effective October 1, 2004 and will supersede all prior guidelines and amendments. They apply, statewide, to all divorce, paternity and other proceedings involving child support entered on or after October 1, 2004.
    The 2004 Guidelines were adopted by family court judges statewide, after review by representatives of the Child Support Enforcement Agency, in July 2004.

*See 2004 Guidelines*, https://ku.ehawaii.gov/juddocs/page_server/SelfHelp/Forms/Oahu/7D004AF15FE5ADBDEEA9E49E98.html (last accessed December 15, 2010), *reprinted in* 1 Hawaii State Bar Association, 2005 Hawai'i Divorce Manual, § 4, App. 3 (7th ed. 2005). Pertinent to this case is Section IV. E of the Instructions to the 2004 Guidelines, entitled "Adult Dependent Children," which reads,

> All stipulations and orders for child support should expressly retain court jurisdiction to modify or extend child support.

> Support for an adult child who is a full-time student may continue until the child attains the age of 23. The Family Court in its discretion may order support for post high school education. In determining support for an educationally dependent adult child, the Family Court should take into account (a) the adult child's earnings, (b) the adult child's property, (c) the adult child's needs, as well as (d) both parents' income and resources. In appropriate circumstances, an educationally dependent adult child receiving educational support should be expected to contribute to his or her own self support through (a) part-time employment not harmful to the child's academic progress, or to other appropriate school-related pursuits, (b) grants, scholarships, and fellowships and (c) loans.

> Payments may be made directly to the educationally dependent adult child by agreement of the parties or by order of the court.

> The Family Court in its discretion may order the parents of an incompetent child to support their child beyond the age of majority, and beyond age 23, without regard to the child's educational status.

The 2004 Guidelines also address the "exceptional circumstances" provided for in HRS § 571–52.5.[26] Section IV. B. of the Instructions provides:

> https://ku.ehawaii.gov/juddocs/page_server/SelfHelp/Forms/Oahu/7D004AF15FE5ADBDEEA9E49E98.html

**26.** HRS § 571–52.5 provides:
**Guidelines to determine child support amounts.** When the court establishes or modi-

The Court or Office of Child Support Hearings must order the amount of child support as calculated from the Child Support Guidelines unless there are exceptional circumstances, which warrant deviation from the Child Support Guidelines. Exceptional circumstances may allow a deviation from the child support guidelines calculation of child support. If you believe exceptional circumstances exist in your case, complete the Exceptional Circumstance Form (Attachment C) and attach it to your Child Support Guidelines Worksheet. The party requesting an exceptional circumstances deviation from the Child Support Guidelines has the burden of proving that exceptional circumstances exist and that the circumstances warrant departure from the calculated Child Support Guidelines amount.

The Court or Office of Child Support Hearings shall determine whether alleged exceptional circumstances exist on a case-by-case basis. When the Court or Office of Child Support Hearings concludes that there are exceptional circumstances, they shall make oral findings of fact on the record or prepare written findings of fact regarding the exceptional circumstances. The findings of fact shall include the amount of support that would have been required under the Guidelines.

Examples of exceptional circumstances include (without limitation) the following:

> . . . .

> 3. *Extraordinary Needs of Child/Other Parent* Where the subject child(ren), or the subject child(ren)'s other parent, have extraordinary needs (e.g., special educational and/or housing needs for a physically or emotionally disabled child);

> . . . .

> 6. *Other Exceptional Circumstances:*
> The Court and Office of Child Support Hearings has the discretion to find other exceptional circumstances.

fies the amount of child support required to be paid by a parent, the court shall use the guidelines established under section 576D–7, except when exceptional circumstances warrant departure.

In the present case, the family court expressly used the 2004 Child Support Guidelines Worksheet in calculating Husband and Wife's proportionate share of income, but did not appear to apply the 2004 Guidelines' provision limiting support to adult dependent children to the age of twenty-three. Instead, relying on HRS § 580–47,[27] the family court ordered that Husband and Wife pay their proportionate share of Daughter's unmet educational expenses because "[g]ood cause exists."

Nothing in HRS § 580–47 suggests that "good cause" is a substitute for application of the Child Support Guidelines. To the contrary, HRS § 580–47 also directs that, "[i]n establishing the amounts of child support, the court shall use the guidelines established under section 576D–7."

This leaves us with the question whether the 2004 Guidelines categorically prohibited the award of educational support to an adult child after his or her twenty-third birthday. We conclude it did not. In creating the statutory framework for the award of child support, including the creation of the 2004

Guidelines, the legislature did not specify an age-limit cap for educational support for children beyond the age of majority. *See* S. Stand. Comm. Rep. No. 535, in 1977 Senate Journal, at 1081 ("[t]he purpose of this bill is to clearly and specifically define the authority, which has been exercised by long custom and practice"); H. Stand. Comm. Rep. No. 872, in 1977 House Journal, at 1715. Rather, it appears the legislature sought to codify the family courts' existing authority to order parents to continue support for their adult children, under certain circumstances, but to require that the family courts do so within the framework of consistently-applied guidelines, absent extraordinary circumstances justifying deviation from the guidelines.

The 2004 Guidelines provide that support for an adult child who is a full-time student "may continue until the child attains the age of 23." The 2004 Guidelines also provide that adherence to the Guidelines is required "unless there are 'exceptional circumstances,'" and the Adult Dependent Children provision itself is in the section entitled, "Exceptional Circumstances."[28] The 2004

---

**27.** Presumably, the family court relied on the following language within HRS § 580–47:

(a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties[.]

**28.** Examples of exceptional circumstances include (*without limitation*) the following:

1. *The 70% Rule* Where the amount of child support as calculated by the Child Support Guidelines Worksheet for the subject child(ren) is greater than 70% of the obligor's net income (as set forth in Attachment A–2);

2. *Support of Other Children* If the total of (a) the amount of child support for the subject child(ren) as calculated by the Child Support Guidelines Worksheet and (b) the amount of child support the obligor is legally required to pay for his or her other child(ren)[2] is greater than the obligor's net income (as set forth in Attachment A–2), then child support for (each of) the subject child(ren) shall be the higher of the following:

● The amount obtained by dividing the obligor's net income by the total number of all of the children the obligor has a legal obli-

gation to support, including the subject child(ren); or

● $50.00 per child;

3. *Extraordinary Needs of Child/Other Parent* Where the subject child(ren), or the subject child(ren)'s other parent, have extraordinary needs (e.g., special educational and/or housing needs for a physically or emotionally disabled child);

4. *Other Payments for Child/Other Parent* Payments made by the obligor to or for the benefit of the subject child(ren), or the subject child(ren)'s other parent, where they are obligated to be made by law, including payment for extraordinary medical needs;

5. *Support Exceeding Needs of Child* Where the amount of child support as calculated by the Child Support Guidelines Worksheet for the subject child(ren) exceeds the reasonable needs of the child(ren) based on the child(ren)'s appropriate standard of living, which will be determined on a case-by-case basis;

6. *Other Exceptional Circumstances:*

The Court and Office of Child Support Hearings has the discretion to find other exceptional circumstances.

In the following situations, it has been determined that no exceptional circumstances exist:

1. *Agreement for Lesser Amount* While the parties' agreement to an amount of child support higher than the amount calculated ac-

Guidelines include examples of exceptional circumstances as well as examples of circumstances not considered exceptional. The 2004 Guidelines also allow that a court may find "other" circumstances exceptional.

This is not to say that the twenty-three year-old age limit is to be treated lightly. Although the genesis of this age limit is not clear, it is reasonable to conclude that it is based on the age of a student who has had the opportunity to complete a standard, four-year undergraduate course of study. Indeed, it is reasonable for both the parents of adult children and the adult children themselves to anticipate that, at age 23, adult children will become financially responsible for their own support, maintenance, and education. Furthermore, an age limit is important so that the child support calculation can be made with relative ease, certainty, and consistency.

Nevertheless, the 2004 Guidelines provide for deviations where "exceptional circumstances" exist and allow for "other" circumstances to be found by the court. Pertinent to this case, they provide for extraordinary educational or housing needs for a physically or emotionally disabled child as an exceptional circumstance. 2004 Guidelines, section IV. B. 3. We do not read the 2004 Guidelines to allow for the greater expenses of a disabled child younger than twenty-three but to forbid support to the same child because he or she could not, because of their disability, complete their education within the standard four years. We therefore hold that the family court could find that an adult child's physical disability constitutes exceptional circumstances resulting in a child support award to that disabled adult child beyond the age of twenty-three.

This interpretation is not unique. Many jurisdictions provide for the support of disabled children beyond the age of majority and many set no age limit. *See Age of Child Support Termination by State Exceptions for Adult Children with Disabilities*, National Conference of State Legislatures, http://www.ncsl.org/default.aspx?tabid=16411 (last visited January 27, 2011).[29]

---

cording to the Child Support Guidelines may be enforceable, the parties' agreement for the payment of less than the amount of child support as calculated from the Child Support Guidelines is not an exceptional circumstance.

2. *Remarriage and New Family* The remarriage of a child support obligor to an individual who has a child not of the obligor requiring support is not an exceptional circumstance.

3. *Visitation Expenses* The need to pay transportation expenses relating to visitation is not an exceptional circumstance.

4. *Heavy Debt* Ordinarily, the existence of heavy debts will not constitute an exceptional circumstance.

5. *Private Education Expenses* The private education expenses of the subject child(ren) are considered as an expense to be paid from the SOLA portion of child support, and they are not an exceptional circumstance justifying greater-than-Guidelines child support, unless such expenses are so extraordinary that SOLA cannot adequately cover them, or if the child has been in private school with the agreement of the parties prior to separation.

---

2 For the purposes of these Child Support Guidelines, Obligor's "other children" are Obligor's biological or adopted child(ren) living in the Obligor's household and any child(ren) whom the Obligor is legally obligated to support and is actually supporting. Stepchildren are not considered to be Obligor's "other children" under these child Support Guidelines. 2004 Guidelines, section IV. B.

https://ku.ehawaii.gov/juddocs/page_server/Self Help/Forms/Oahu/7D004AF15FE5ADBDEEA9E 49E98.html (last visited December 16, 2010) (some emphasis added).

**29.** We also note that the present guidelines expressly provide for support of a disabled child "beyond age 23, without regard to the child's educational status." 2010 Guidelines, section III. A. On August 29, 2010, the 2010 Child Support Guidelines went into effect. *See* http://www.courts.state.hi.us/self-help/courts/forms/oahu/child_support.html (last visited December 15, 2010). The guideline regarding adult dependent children now reads:

**III. OTHER CHILD SUPPORT CONSIDERATIONS**

**A. ADULT DEPENDENT CHILDREN**

All stipulations and orders for child support should expressly retain Court and OCSH jurisdiction to modify or extend child support. Support for an adult child who is a full-time student according to the institution the child attends may continue until the child attains the age of 23 after considering these factors: (1) the adult child's earnings, (2) the adult child's property, (3) the adult child's needs, as well as (4) both parents' income and resources.

In appropriate circumstances, an educationally dependent adult child receiving educational support should be expected to contribute to his/her own self support through

Turning to the instant case, it is undisputed that Daughter is legally blind and that this disability caused substantial delay in completing her studies. This was true during high school, as she did not earn her diploma until she was twenty years old, as well as during her college studies, where additional classes and support were necessary to assist her in learning to live independently.

However, on this record, it is unclear that the family court considered Daughter's disability an exceptional circumstance that excused application of the twenty-three year-old age limit. The 2004 Guidelines state that, "[w]hen the Court or Office of Child Support hearings concludes that there are exceptional circumstances, they shall make oral findings of fact on the record or prepare written findings of fact regarding the exceptional circumstances." As the family court did not address whether exceptional circumstances were present here, we remand for the entry of those findings.

 Our resolution of the child support issue makes it unnecessary for us to address Husband's challenge to the amount of the support ordered.[30]

### III.

The Family Court of the First Circuit's July 19, 2006 Order is affirmed. The family court's May 24, 2005 Order is vacated and this case is remanded for (1) findings on the issue of whether Wife has proved exceptional circumstances warranting deviation from the age limit on support for an adult child beyond the age of twenty-three set in the 2004 Guidelines and, if so, (2) the amount and duration of support.

---

(1) part-time employment not harmful to the child's academic progress, or to other appropriate school-related pursuits, (2) grants, scholarships, and fellowships (tuition forgiveness), and (3) loans.[ ]
Payments may be made directly to the educationally dependent adult child by agreement of the parents or by order of the court. Normally, a parent who receives child support for an educationally dependent adult child should pay for the child's room and board.
The Court in its discretion may order the parents of a disabled child to support their child beyond the age of majority, and beyond age 23, without regard to the child's educational status.
The "2010 Guidelines [ ] apply, statewide, to all divorce, paternity, and other proceedings in-

volving child support orders entered on or after August 29, 2010[.]" Memorandum re: 2010 Child Support Guidelines, 2 (2010), http://www.courts.state.hi.us/docs/form/oahu/child_support/csg_memo.pdf. *See also* HRS § 580–47(c).

**30.** We note, however, as discussed above, Section IV. E. of the Instructions to the 2004 Guidelines, entitled "Adult Dependent Children," mandates certain considerations by the family court. In appropriate circumstances, educationally-dependent adults "should be expected to contribute" to their support through part-time employment, grants, scholarships, fellowships, and loans. Thus, the failure of an adult child to pursue reasonable avenues to contribute to his or her support may be considered in determining a parent's support obligation.